**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4006-22

JASON JANI,

    Plaintiff-Respondent,

v.

ANDREIA JANI,

    Defendant-Appellant.

_____

> Submitted October 1, 2024 – Decided October 23, 2024
>
> Before Judges Bishop-Thompson and Augostini.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-1309-19.
>
> Villani & DeLuca, PC, attorneys for appellant (Michael C. Ayres, on the briefs).
>
> Keith, Winters, Wenning & Harris, LLC, attorneys for respondent (Brian D. Winters, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, defendant Andreia Jani appeals from a July 20, 2023 order denying her motion to increase plaintiff's alimony obligation and terminating alimony as of April 14, 2022. We reverse and remand for a plenary hearing.

I.

The parties were married in June 2006 and have three children, ages seventeen, fourteen, and eight. After two days of trial, on December 11, 2020, they entered a marital settlement agreement (MSA) and were divorced by way of a Dual Final Judgment of Divorce (DFJOD).

The parties were divorced during the COVID-19 pandemic. As a result, a significant issue during their divorce was their incomes. Relevant to plaintiff's alimony obligation, in paragraph ten of their DFJOD, the parties' agreed:

> **Paragraph 10**. The parties agree that under the present circumstances of the pandemic, there is an inability to determine income imputation for [H]usband, however [W]ife believes [H]usband's income should be presently imputed at $115,000, and her income should be imputed at $25,000. Husband asserts his income is approximately $80,000.00 and Wife's should be imputed at $35,000.00. Notwithstanding this disagreement, Husband agrees to pay Wife alimony in the sum of $1,000/month, paid weekly directly to [W]ife via direct pay, which is an allocated amount which conglomerates child support and alimony. This negotiated amount takes into consideration [W]ife's alimony demand less her obligation to pay child support

to Husband. This amount is being paid without prejudice to both parties' future rights/arguments. The parties have agreed to an exchange of income information in six months as neither party can predict what the long-term effect of the pandemic will be on their income. And neither party shall be required to prove a <u>Lepis</u> change of circumstance to seek modification of the overall support obligation, and the parties acknowledge that the child support and alimony will be modified depending upon future circumstances at the six-month review.

Paragraph eleven of the DFJOD further addressed the term of alimony and provided a buyout provision:

**Paragraph 11**.   The payment of alimony shall be limited to the duration of six (6) years in total, regardless of the review in six months.  In other words, the six-month review shall not include a renegotiation of the term of support, only the amount. Upon payment by Husband to Wife in the amount equal to 72 months of support, then the alimony obligation shall irrevocably terminate. If during the period of alimony Wife should cohabitate or remarry then and in either of those events[,] alimony shall irrevocably terminate.

In preparation for the agreed-upon six-month review of alimony, the parties were required to exchange financial information as detailed in paragraph twelve of the DFJOD and thereafter attend mediation to "expedite a resolution of this recalculation":

**Paragraph 12**. The parties shall have an obligation to exchange their income information in six months so the issue of alimony and child

3

A-4006-22

support can be recalculated. Proof of income for [W]ife shall be determined through a review of her pay stubs and a record of deposits into her personal account, and for Husband through a review of his Profit and Loss Statement for SCE or his then current employment contract or paystubs if no contract exists, and copies of bank records whether held personally or through any entity [H]usband owns or has an interest in. The parties shall return to Joseph Gunteski, CPA, in order to expedite a resolution of this recalculation at that time. In the recalculation of child support the parties shall utilize two sets of guidelines, assuming there remains a split custody arrangement, and net out of the two obligations. The payment of Mr. Gunteski's fees for the mediation shall be shared equally between the parties. Mr. Gunteski shall not be required to prepare a cash flow analysis and if Wife demands the preparation of an analysis, regardless of its depth, then she shall be obligated to satisfy that fee.

Paragraph thirteen of the MSA set forth the parties' agreement regarding child support:

Paragraph 13. The parties agree that they each have a reciprocal child support obligation to each other based upon the split parenting arrangement as referenced above. However, for the purposes of this agreement, the child support payment is being subsumed into the $1000/month un-allocated payment. The parties agree that the proper child support amounts shall be calculated at the six-month review, which shall include all applicable health insurance credits, parenting time credits, etc.

4

The six-month review of alimony and child support was to occur in June 2021. However, the parties did not attend mediation with Mr. Gunteski until August 2021. Mediation was unsuccessful. In March 2022, defendant filed a notice of motion that was dismissed without prejudice as deficient.

On April 14, 2022, plaintiff tendered a check to defendant in the amount of $55,000 to fulfill his alimony obligation pursuant to the buyout provision in paragraph eleven of the DFJOD. Defendant did not immediately cash this check. Rather, she filed a second notice of motion on June 17, 2022 seeking, in part, to modify alimony and child support. Plaintiff filed a cross motion on July 28, 2022, seeking, in part, a credit of $55,000 as a prepayment of alimony should the court set aside the parties' agreement.

In support of his cross motion, plaintiff certified that after the initial mediation in 2021, the parties agreed to maintain the status quo of $1,000 per month in alimony. This assertion, however, was uncorroborated. Plaintiff further certified that given the passage of time, defendant was required to demonstrate changed circumstances before alimony should be modified.

After conducting oral argument on August 12, 2022, the court noted paragraph twelve of the DFJOD provided that the parties had an obligation to exchange income information in six months from the date of their divorce "so

A-4006-22

the issue of alimony and child support can be recalculated." However, the court found that "there [was] no evidence before this [c]ourt that the parties exchanged their income" information before attending mediation in August 2021. The court further found that even though there were conflicting certifications regarding the issue of financial submissions, no hearing was necessary on this issue.

The court directed the parties to "exchange financial information as specified in the [D]FJOD within [fourteen] days of [the] Order. . . . [and] [t]hereafter, . . . attend mediation with Joseph Gunteski, CPA within [thirty] days of [that]." The parties were to advise the court if mediation was unsuccessful, and in turn, the court would schedule a case management conference.

The parties attended mediation on October 6, 2022, presumably having received the requisite financial information.[1] On April 27, 2023, defendant notified the court that mediation was unsuccessful and requested a case management conference. In response, plaintiff asserted that circumstances had not changed to justify a modification of alimony since the August 12, 2022 order, and furthermore, defendant had cashed the $55,000 check thereby

---

[1] The record is unclear as to whether the parties provided the financial information set forth in paragraph twelve of their MSA after the August 12, 2022 hearing.

satisfying plaintiff's alimony obligation pursuant to the buyout provision in the DFJOD.

At a case management conference on June 6, 2023, the court directed the parties to brief the unresolved issues in the August 12, 2022 order. Without further oral argument or a hearing, the court issued an order on July 20, 2023, denying defendant's request to increase alimony and denying without prejudice defendant's request to recalculate child support. The court terminated plaintiff's alimony obligation as of April 14, 2023.[2]

In its statement of reasons attached to the July 20, 2023 order, the court explained that the terms of the MSA were clear and unambiguous. Consistent with the terms set forth in paragraph twelve of the DFJOD, the court previously directed the parties to provide the agreed-upon financial information and return to mediation. Having attended mediation again and without resolving the alimony and child support obligation, the court reasoned that "the issue is now before the [c]ourt as a matter of law[, and] [t]here is no factual dispute before the [c]ourt." The court enforced the buyout provision in paragraph eleven and found that "plaintiff's alimony obligation . . . terminated as of the tendering of

---

[2] It appears that this provision in the order was intended to reflect a termination of alimony on the date plaintiff tendered the check in the amount of $55,000, which was April 14, 2022 and not April 14, 2023 as stated in the order.

A-4006-22

the $55,000 check on April 14, 2022." Additionally, since the child support obligation was "subsumed into the alimony obligation for the duration of the six (6) year term," the court concluded that recalculation of child support was not ripe until December 2026, pursuant to paragraph thirteen of the DFJOD. This appeal followed.

On appeal, the parties dispute whether a plenary hearing was necessary regarding enforcement of the alimony provisions in their MSA. Defendant asserts the court erred in terminating plaintiff's alimony obligation without a plenary hearing, contravening the clear language and intent of the parties' MSA. Plaintiff contends the court properly determined a plenary hearing was unnecessary and correctly terminated plaintiff's alimony obligation after he exercised the buyout option, thereby satisfying his alimony obligation.

## II.

In reviewing a family court's decision on alimony, we generally defer to the trial judge's findings and reverse only where there is an abuse of discretion. See Overbay v. Overbay, 376 N.J. Super. 99, 106 (App. Div. 2005). However, where the issue is a mistake of law, our review is de novo. S.D. v. M.J.R., 415 N.J. Super. 417, 430 (App. Div. 2010) (citing Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). Likewise, "we review the

interpretation of a matrimonial settlement agreement de novo." Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020).

"Settlement of disputes, including matrimonial disputes, is encouraged and highly valued in our system." Quinn v. Quinn, 225 N.J. 34, 44 (2016). Moreover, it is well established that matrimonial agreements represent enforceable contracts. Quinn, 225 N.J. at 45 (citing J.B. v. W.B., 215 N.J. 305, 326 (2013)); Pacifico v. Pacifico, 190 N.J. 258, 265-66 (2007). Because marital settlement agreements are voluntary and consensual, they are presumed valid and enforceable. See Massar v. Massar, 279 N.J. Super. 89, 93 (App. Div. 1995).

When interpreting a marital agreement, "[t]he court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the 'expressed general purpose.'" Pacifico, 190 N.J. at 266 (quoting Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302 (1953)). Thus, "when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Quinn, 225 N.J. at 45 (citing Sachau v. Sachau, 206 N.J. 1, 5-6 (2011)).

Applying these legal principles, we conclude that the court erred in finding that the interpretation of the parties' MSA presented a question of law

and that a plenary hearing was unnecessary to resolve the issues of alimony and child support. Specifically, the court misinterpreted the terms of the MSA by terminating alimony as of the date plaintiff tendered the lump sum payment and prior to the recalculation hearing.

At the time of their divorce, the parties agreed to a six-month review of alimony and child support because there was an "inability to determine income imputation" for plaintiff due to the impact of the pandemic on plaintiff's business. The failure of the parties to exchange income information delayed the six-month review. A meaningful review of the support obligations was premised on the parties' exchange of their income information as set forth in paragraph twelve of the MSA. Without that information, neither party was able to make an informed decision regarding income imputation and readjustment of alimony.

In construing the relevant provisions in the parties' MSA, the court needed to look to the entire agreement to determine the parties' intent at the time of their divorce. Specifically, paragraphs ten, eleven, and twelve of the MSA read together, demonstrate the parties' objective in conducting this review; namely, to expedite a resolution of the recalculation of alimony and child support once updated income information was reviewed.

After the court directed the exchange of financial information and mediation was yet again unsuccessful, the parties' dispute regarding the correct amount of alimony persisted. The issue was brought back to the court for resolution in June 2023. The record, however, is void of any reference that the court received and reviewed the parties' updated income information. Therefore, the record does not support the court's conclusion that there was no factual dispute as to the parties' respective incomes.

Moreover, the court erred in concluding that plaintiff's invocation of the buyout provision in paragraph eleven of the MSA, prior to the recalculation of alimony, terminated his alimony obligation. Paragraph eleven underscores the purpose of the six-month review: a renegotiation of the amount of support and not the term. This sentence precedes the buyout option, which states: "[u]pon payment by Husband to Wife in the amount equal to 72 months of support, then the alimony obligation shall irrevocably terminate." (emphasis added). The plain meaning of this provision is that the review and resolution of the amount of alimony would occur before plaintiff could exercise the buyout provision. Moreover, as the August 12, 2022 order states, the prepayment of alimony would not terminate plaintiff's alimony obligation; rather, it would be credited against a future alimony obligation to be determined. Based upon the unambiguous

11

language of the MSA and considering the circumstances at the time of the parties' divorce, the court erred in permitting the tendering of the $55,000 check on April 14, 2022 to satisfy plaintiff's alimony obligation, thereby terminating it, prior to a recalculation of alimony.

In sum, we reverse and remand for a hearing to review and recalculate alimony. In determining the amount of alimony, the court must consider the parties' financial circumstances, and the factors set forth in N.J.S.A. 2A:34-23(b) to enter an order that is "fit, reasonable, and just." N.J.S.A. 2A:34-23.

To the extent we have not addressed any remaining arguments raised by defendant, it is because they lack sufficient merit to warrant discussion in a written decision. R. 2:11-3(e)(1)(E).

Reversed and remanded for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION